# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

      Plaintiff,                          Case No. 8:14-cr-185-T-23MAP

      v.

ALI EL KHATEEB,
ALA EDDIN M. KHALED,
GEORGE CHALLITA, and
ANWAR GABER

      Defendants.
_____/

### DEFENDANT ALI EL KHATEEB'S OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS EVIDENCE DERIVED FROM SEARCH OF EMAIL INFORMATION

Defendant Ali El Khateeb ("Khateeb") objects to the Magistrate Judge's Report and Recommendation ("R&R"), Doc. 285. Khateeb moved to suppress evidence that was seized as a result of an unconstitutional search of information related to his email address. Doc. 177. Khateeb argued that his email information should be suppressed because the search warrant affidavit: does not on its face contain sufficient information to establish probable cause, contained stale allegations, and omitted material information. Additionally, the search warrant was overbroad. The Magistrate Judge erred in recommending that the Court deny Khateeb's motion to suppress. Accordingly, the Court should reject the R&R and grant Khateeb's motion to suppress all evidence derived from the search of Khateeb's email information.

1

**ARGUMENT**

## I.      Legal and Factual Background

### A.      The Regulation of Controlled Substance Analogues.

The indictment here involves alleged manufacture and distribution of controlled

substance analogues in violation of 21 U.S.C. Section 813 and 21 U.S.C. Section 841(a)

(collectively, the "Analogue Act").   Section 841(a) makes it unlawful to knowingly and

intentionally manufacture or distribute a controlled substance.   Section 813 provides that a

"controlled substance analogue" shall, if intended for human consumption, be treated as a

controlled substance.   The term "controlled substance analogue" is defined by 21 U.S.C.

Section 802(32)(A) as a substance–

> (i) the chemical structure of which is substantially similar to the chemical
> structure of a controlled substance in schedule I or II;
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central
> nervous system that is substantially similar to or greater than the stimulant,
> depressant, or hallucinogenic effect on the central nervous system of a controlled
> substance in schedule I or II; or
> (iii) with respect to a particular person, which such person represents or intends
> to have a stimulant, depressant, or hallucinogenic effect on the central nervous
> system that is substantially similar to or greater than the stimulant, depressant,
> or hallucinogenic effect on the central nervous system of a controlled substance
> in schedule I or II.

The first of the three prongs above is read in the conjunctive with the remaining two

prongs.   That is, for a substance to be an analogue, it must have a chemical structure that is

substantially similar to a controlled substance *and* it must either have a substantially similar

effect on the central nervous system or be represented or intended to have such an effect.   *See*

*United States v. Turcotte*, 405 F.3d 515, 521-23 (7th Cir. 2005); *United States v. Roberts*, 363

F.3d 118, 121 (2d Cir. 2004); *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003); *United*

2

*States v. Hodge*, 321 F.3d 429, 433 (3d Cir. 2003); *United States v. Washam*, 312 F.3d 926, 930 n.2 (8th Cir. 2002); *United States v. Brown*, 279 F. Supp. 2d 1238, 1240 (S.D. Ala. 2003); *United States v. Forbes*, 806 F. Supp. 232, 235 (D. Colo. 1992).

In addition, the *mens rea* from the underlying Section 841 offense carries over to violations of the Analogue Act. *McFadden v. United States*, 135 S. Ct. 2298, 2305 (2015). That is, to satisfy the mental state requirement for an analogue offense, the government must show one of two things: (1) that the "defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act;" or (2) that the defendant knew "the physical characteristics that give rise to" a substance's treatment as an analogue – that is, that the substance is substantially similar in both chemical structure and pharmacological effect to a scheduled controlled substance. *Id.* at 2305-06.

### B.    Allegations in the search warrant affidavit

On October 4, 2013, the government applied for a search warrant for information associated with the email address alielkhateeb@aol.com, Doc. 177 Ex. 1, which is Khateeb's email address.[1]  The affidavit alleges that there is probable cause to believe that the information associated with this email address will provide evidence of an Analogue Act violation. Doc. 177 Ex. 1 ¶ 43.  The affidavit contains a series of allegations regarding purchases of a substance

---

[1]In a footnote, the R&R questions whether Khateeb has standing to challenge the search of his email address because he did not provide an affidavit attesting that the email account was his and it was set up for him with another individual listed as the subscriber.  Doc. 285 at 6 n. 10.  The government has never disputed that the email address "alielkhateeb@aol.com" belongs to Ali El Khateeb.  As the R&R properly recognizes, *id.*, the government has therefore waived any issue related to Khateeb's standing to challenge the search of his email account.

known as AM-2201, and manufacture and distribution of products containing AM-2201.  The affidavit alleges that scientists within the DEA's Office of Diversion Control have determined that AM-2201 "is substantially similar in chemical structure to the schedule I controlled substance JWH-018 and has substantially similar pharmacological effects on the central nervous system as JWH-018" and is therefore a controlled substance analogue. *Id.* ¶ 29.  The DEA had scheduled JWH-018 as a controlled substance on an emergency basis in March 2011. *Id.* ¶ 20.

Specifically, the affidavit alleges that the Hillsborough County Sheriff's Office (HCSO) received information in November 2011 that an entity known as Wild Incense was manufacturing synthetic cannabinoid products described as "incense" at a warehouse located at 4401 East 10th Avenue, Tampa, Florida.  Doc. 177 Ex. 1 ¶ 23.  In April 2012, HCSO detectives visited the 4401 East 10th Avenue location and interviewed the manager of the business, George Challita. *Id.* ¶ 24.  At the time of the visit, a Florida statute had recently made AM-2201 illegal under Florida law, and Challita explained to law enforcement that the products containing AM-2201 had been shipped out of state and there were no illegal products in the warehouse. *Id.* Several items were seized, including one open package of a product that contained AM-2201. *Id.* ¶¶ 26, 29.

Additionally, the affidavit alleges that Wild Incense and another company, Joker and Omar, were owned by Alaeddin Khaled, Doc. 177 Ex. 1 ¶¶ 28, 30, and that law enforcement interviewed Khaled in September 2013. *Id.* ¶ 30.  Khaled described his purchase of AM-2201 from a supplier in China and a domestic company known as Mountain Industries. *Id.* ¶¶ 31, 32. Khaled also described his companies' wholesale sales of materials used to make incense products and manufacture and sale of retail incense products. *Id.* ¶¶ 30, 31, 34.  Khaled stated

Khateeb was a sales representative for his company.   ¶ 30.   Khaled's involvement with these companies is alleged to have begun in April or May 2011 and ended shortly after the business was visited by law enforcement in April or May 2012.  *Id.* ¶¶ 30, 34.

Finally, the affidavit alleges that law enforcement interviewed Alexander Reece, the principal of a company known as Blue Sky International/Mountain Industries that supplied AM-2201 to someone known as "Ali" at a company known as Ali Baba Wholesale, which Khateeb was allegedly affiliated with.  Doc. 177 Ex. 1 ¶ 35.  The affidavit alleges that "Ali" purchased 44 kilograms of AM-2201 between May 2011 and August 2011, and a total of over 100 kilograms of AM-2201 "over the past few years."  *Id.* ¶¶ 35, 36.  It also quotes several email communications in June 2011 that were sent to "Ali" at the alielkhateeb@aol.com email address. *Id.* ¶¶ 39, 40.

### C.    Matters not contained in the search warrant affidavit

There were a number of matters relevant to the magistrate judge's evaluation of the search warrant application that were not addressed by, or were omitted from, the search warrant affidavit.  Each of these matters is discussed below.

#### 1.    Lack of *mens rea*

The affidavit in support of the search warrant includes no allegations that Khateeb acted with *mens rea*.  As discussed above, the intent element of an Analogue Act offense requires that the government "prove that a defendant knew that the substance with which he was dealing was 'a controlled substance,' even in prosecutions involving an analogue."  *McFadden*, 135 S. Ct . at 2305.  The affidavit does not allege that Khateeb knew that AM-2201 was unlawful, that he

knew the DEA or any other governmental entity considered it to be an analogues, or that he knew that it met the characteristics of an analogue at any point during the relevant time period.

2.      The time frame of the alleged activity

AM-2201 was made a controlled substance on July 9, 2012, with the enactment of the Synthetic Drug Abuse Prevention Act of 2012,  Pub. L. No. 112-144 § 1152.  The government has no evidence Khateeb engaged in any activity involving AM-2201 after that date.  It could not have any such evidence because Khateeb stopped doing any business involving AM-2201 before the July 9 ban took effect – that is, at least fifteen months before the date of the search warrant.

The search warrant affidavit does not disclose that none of the activity involving AM-2201 it describes took place after July 2012.  Law enforcement's visit to the Wild Incense premises took place in April 2012.  Doc. 177 Ex. 1 ¶ 24.  It is apparent from the affidavit's description of the time frame during which Khaled operated Wild Incense and Joker and Omar that any events relating to those companies took place before April or May 2012.  *Id.* ¶ 34.  With regard to the purchases from Mountain Industries, the affidavit states that Khateeb purchased over 100 kilograms of AM-2201 "over the past few years."  *Id.* ¶ 36.  In fact, however, as the government was or should have been aware, all of Khateeb's purchases of AM-2201 from Mountain Industries took place within 2011.  The search warrant affidavit fails to disclose this fact, leaving the misleading impression that the activity it described was ongoing, when it fact it had concluded at least fifteen months before.

3.      Scientific disagreement regarding whether AM-2201 is an analogue of JWH-018

Khateeb's motion to dismiss discusses in detail the disagreement in the scientific community regarding whether AM-2201 is substantially similar in chemical structure to JWH-018, as the government alleges.  Doc. 172 at 13-17.  Indeed, there is disagreement within the scientific community regarding whether the "substantially similar" standard can even be applied in a meaningful way.  *Id.* at 9-11.  As is also discussed in Khateeb's motion to dismiss, there was insufficient data available during the relevant time period regarding the effects of AM-2201 on humans to know what those effects are at all, much less to establish that they are substantially similar to or greater than those of JWH-018.  *Id.* at 17-18.  Further, information that the government disclosed in another case pursuant to its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), demonstrates that even within the DEA, scientists are not in agreement regarding the methodology by which determinations that a substance is an analogue are reached.  Doc. 173 Ex. 1.  Indeed, it appears that there has been disagreement within the DEA regarding the determination that certain substances are analogues.  *Id.*  None of this information was disclosed in the search warrant affidavit.

4. Lack of notice that the government considered AM-2201 to be an analogue of JWH-018

Along with failing to disclose the time frame within which the alleged activity took place, the search warrant affidavit also did not make the court aware that within that time frame, the public had no notice that the government considered AM-2201 to be an analogue.  The Analogue Act does not delegate authority to any branch or agency of government to determine what molecules are substantially similar to one another in either chemical structure or pharmacological effect.  In practice, it appears the government's litigation positions under the

7

Act are established by the DEA.  Neither the DEA nor any other agency of government, however, informs anyone outside of the government what substances the DEA believes are unlawful under the Act.

It is unclear when the DEA – or any other government agency – reached the conclusion that AM-2201 was an analogue.  The first time those outside the government could learn that the DEA considered AM-2201 to be an analogue was July 25, 2012, when there was a nationwide law enforcement action called Operation Log Jam, and the government executed search warrants and seizure warrants across the country relating to AM-2201 and other substances alleged to be controlled substance analogues.  The search warrant application did not inform the court that there was no notice to the public that the government considered AM-2201 to be an analogue until after Khateeb's involvement with AM-2201 had ended.

### D.    The scope of the search warrant

The search warrant the government obtained allowed law enforcement to search "[a]ny and all AOL accounts for the screen name: alielkhateeb@aol.com to include email, histories, buddy lists, profiles, subscriber information, method of payment, detailed billing records, log on and log off times, and IP address history."  Doc. 177 Ex. 2 Attachment A.  It allowed the seizure of the following:

> evidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Section 813, namely, all records, documents, and materials, including those used to facilitate communication, in any form, in the possession of AOL Inc., located at 22000 AOL Way, Dulles, Virginia 20166, which pertain to the below listed account information (including subscriber's full name, addresses, telephone numbers, screen names, account numbers, status of account duration of account, method of payment); account history including customer terms of service; complaints detailed billing records; "buddy lists," IP address

8

history, the existence and content of all electronic mail sent from or received by the following account:

Screen Name: **alielkhateeb@aol.com**

The items to be seized may be more fully described as:

1.     Correspondence pertaining to the possession, receipt, distribution of controlled substances.

2.     Letters, other correspondence, and mailing information identifying persons transmitting, through interstate commerce including by computer and/or by United States mail, any controlled substances.

3.     Records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving controlled substances including by computer or by the United States mail.

4.     Mailing lists, supplier lists, mailing address lists, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by computer or by the United States mail, of any controlled substances.

Doc. 177 Ex. 2 Attachment B.

The search warrant affidavit alleged that the email account had been created in October 2002. Doc. 177 Ex. 1 ¶ 42. Although the allegations of the search warrant pertained only to events that took place between April or May of 2011 and no later than July 2012, no date limitation was imposed on either the scope of the search or the electronic records to be seized.

## II.     The evidence obtained as a result of the search of Khateeb's email information should be suppressed.

Khateeb's motion to suppress argued that any and all evidence the government obtained as a result of the search of Khateeb's email information should be suppressed. Doc. 177 at 9-19.

9

As the motion explained, the search warrant affidavit failed to establish probable cause to believe that an Analogue Act violation had been committed, the allegations in the search warrant affidavit were stale, and the search warrant affidavit omitted material information. *Id*. at 10-17. Further – and perhaps in part due to these deficiencies – the search warrant that was issued for Khateeb's email information was overbroad. *Id.* at 17-18. Moreover, the good faith exception does not excuse these deficiencies because the search warrant affidavit did not on its face contain sufficient information to establish probable cause and because law enforcement knowingly or recklessly withheld information that would have negated the indicia of probable cause here. *Id.* at 18-19. As is discussed below, the Magistrate Judge's rejection of these arguments was error.

### A.     The search warrant for Khateeb's email information was not supported by probable cause.

As the Magistrate Judge properly recognized, Fourth Amendment analysis "requires that warrants issue only upon probable cause." Doc. 285 at 6. When evaluating a probable cause determination, the reviewing court must examine the "totality of the circumstances" as set forth within the four corners of the search warrant affidavit "to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). While a search warrant affidavit is not required to make a primae facie showing regarding every element of a crime, the Fourth Amendment requires at least a showing of a fair probability that the location to be searched contains evidence of a crime. *Id.* at 235, 238.

10

The search warrant affidavit here failed to establish the necessary substantial basis to believe probable cause existed, because the totality of the circumstances alleged in the affidavit provide no reason to believe Khateeb had the intent necessary to violate the Analogue Act. As discussed above, an essential element of an Analogue Act offense is *mens rea* – that Khateeb knew that the substance was a controlled substance, knew that it was treated as a controlled substance analogue, or knew the facts that establish that it is a controlled substance analogue. *McFadden*, 135 S. Ct. at 2305-06.

It is undisputed here that AM-2201 was not a controlled substance during the relevant time period. The search warrant does not attempt to allege Khateeb knew during the relevant time period that AM-2201 had been determined to be or was considered to be an analogue. It could not have truthfully done so. As discussed above, neither the DEA nor any other government agency provided notice of the government's position that AM-2201 was an analogue until at the earliest July 25, 2012. More fundamentally, the search warrant does not show even that AM-2201 had been determined to be an analogue during the relevant time period – it does not disclose when the DEA decided AM-2201 would be treated as an analogue, or whether that decision took place before Khateeb's alleged involvement with that substance ended.

Nor does the search warrant show Khateeb knew during the relevant time period the facts necessary to show that AM-2201 is an analogue. While the search warrant affidavit – dated October 4, 2013 – alleges that DEA scientists have determined that AM-2201 is substantially similar in chemical structure to JWH-018 and has substantially similar pharmacological effects to JWH-018, Doc. 177 Ex. 1 ¶ 29, nowhere does it allege that Khateeb knew during the relevant

time period that AM-2201 had either of these features.  Again, no such allegation could have been made.  As discussed above and in Khateeb's motion to dismiss, there is significant ongoing scientific disagreement regarding both the substantially similar standard and whether AM-2201 in fact is substantially similar in chemical structure to JWH-018 – and even disagreement within the DEA itself regarding the process by which substantial similarity should be determined.  Doc. 172 at 9-17.  With regard to the pharmacological effect of AM-2201, the state of the science during the relevant time period was not merely disagreement, but the absence of the necessary data on which a scientist could base a reasoned conclusion regarding the pharmacological effect of AM-2201.  Doc. 172 at 17-19.

The R&R gives short shrift to Khateeb's *mens rea* argument.  It states first that the lack of probable cause as to *mens rea* is not relevant to the probable cause determination regarding whether law enforcement would find evidence of a drug conspiracy in documents contained in Khateeb's email account.  Doc. 285 at 8.  To the contrary, as *McFadden* recognized, a showing of *mens rea* is critical to establishing an analogue offense in a way that is not true for a controlled substance offense, or indeed, virtually any other federal criminal offense.  Controlled substance offenses typically involved substances – for example, heroin – that are listed by the DEA; because ignorance of the law is no excuse, defendants are presumed to know that such substances are controlled.  *McFadden*, 135 S. Ct. at 2304.  A defendant may thus be guilty of a controlled substance offense so long as he distributes a substance he knows is controlled, even if he does not know what the substance is; conversely, a defendant may be guilty if he knows the identity of the substance, even if he does not know that it is controlled.  *Id.*  By contrast, an Analogue Act offense by definition involves a substance that is not scheduled and that one

12

cannot assume a defendant knows is unlawful.  The government must therefore prove that the defendant knew a purported analogue is a controlled substance or treated as one, or knew the facts that made it an analogue.  *Id.* at 2305.  Merely establishing that a defendant knowingly distributed a substance, and that the substance was an analogue, without a showing that the defendant had the necessary *mens rea* is insufficient to show an Analogue Act offense took place.  *Id.* at 2307.  Because the search warrant affidavit contained no allegations that would tend to show Khateeb acted with *mens rea*, it failed to establish probable cause.

The R&R further states that Khateeb's assertion that he lacked "*mens rea* is self-serving and best made under oath on another day."  Doc. 285 at 8.  Khateeb's motion, however, was not based on his own statements denying that he acted with *mens rea*, but the complete absence of any facts in the search warrant affidavit showing probable cause to believe that he did act with the necessary mental state.  *McFadden* recognizes that *mens rea* may be established through circumstantial evidence, 135 S. Ct. at 2306 n.3, and Khateeb does not dispute that.  In this case, however, not only are there no allegations in the search warrant affidavit that would show, circumstantially or otherwise, that Khateeb acted with *mens rea*, but the totality of the circumstantial evidence – which was not disclosed in the search warrant affidavit – also shows that he *could not have* acted with the necessary mens rea.

In the absence of any allegations regarding the critical *mens rea* element of the offense, the search warrant affidavit did not provide a substantial basis for concluding that Khateeb's email information would contain evidence of an Analogue Act offense.  The Court should therefore reject the R&R's conclusion that the search warrant affidavit established probable cause for a search of Khateeb's email.

**B.     The allegations in the search warrant affidavit were stale.**

Khateeb's motion further argued that the allegations of the search warrant affidavit failed to establish probable cause for the additional reason that – although the affidavit did not include all of the facts necessary for the magistrate judge to know this – the information it described was stale.  Doc. 177 at 11-13.  Issuance of a search warrant must be based on allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.  Whether the proof meets this test must be determined by the circumstances of each case."  *Sgro v. United States*, 287 U.S. 206, 210-11 (1932).  Accordingly, the federal courts "have developed a staleness doctrine in the context of probable cause which requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues."  *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000).  "Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing."  *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).

"There is no particular rule or time limit for when information becomes stale."  *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000).  Instead, the court must decide whether the allegations are too stale to provide probable cause based on "the peculiar facts of each case."  *Id.*  Factors the Court should consider include "the length of time," the "nature of the suspected crime," the "habits of the accused," the "character of the items sought," and the "nature and function of the premises to be searched."  *Id.*

Here, the length of time between the activity alleged in support of the search warrant and the date of the search warrant weighs in favor of a finding of staleness.  At least fifteen months

14

elapsed between the events alleged in the search warrant affidavit and the date the search warrant was sought.  The allegations directly pertaining to the material the search warrant sought access to – Khateeb's email information – were even older.  The only emails referenced in the search warrant affidavit are emails an alleged supplier sent to Khateeb's email address in June 2011, approximately 28 months before the date a search warrant was sought.  Under those circumstances, the information alleged was simply too old to create a substantial likelihood that Khateeb's email information would contain evidence of a crime.

With regard to the remaining factors that inform the staleness analysis, the search warrant affidavit entirely omits any allegations regarding the "habits of the accused" at all, much less any allegations showing that such habits suggest there was a substantial probability Khateeb's email information would contain evidence of a crime.  Nor is there anything about the "nature of the suspected crime" that makes it especially likely that Khateeb's email information would contain evidence regarding events that took place over fifteen months before.  The "character of the items sought" and the "nature and function of the premises to be searched" overlap here, as the requested search warrant was for Khateeb's email information maintained by AOL on its servers. The search warrant affidavit explains that AOL subscribers can delete sent emails and received emails, and that stored emails are deleted automatically if the subscriber's mailbox exceeds AOL's storage limits.  Doc. 177 Ex. 1 ¶ 12d, e.  The search warrant affidavit fails to specify the maximum capacity of Khateeb's email account.

The R&R rejected Khateeb's staleness argument, stating that "[d]igital files, particularly those stored with an email service provider, are qualitatively different" because they would "remain on AOL's servers indefinitely unless the subscriber had deleted them or the subscriber's

mailbox had exceeded its limits." Doc. 285 at 9. As discussed above, however, the search warrant affidavit provided no information regarding the capacity of Khateeb's mailbox nor any reason to believe Khateeb would not have deleted emails that were years old. Doc. 177 at 12-13. While some courts have approved searches of computer information based on allegations of comparable age, these holdings have been in child pornography cases, based on evidence that collectors of child pornography are likely to "collect" and "hoard" pornographic images for long periods of time. *See e.g.*, *United States v. Lemon*, 590 F.3d 612, 615 (8th Cir. 2010) (collecting cases). In this regard, however, the documented tendency of pedophiles to retain child pornography makes "the staleness determination" in child pornography cases "unique." *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006). No allegations in this search warrant affidavit provided an evidentiary basis on which to conclude that Khateeb's email information would contain evidence regarding events that allegedly took place well over a year before.

Each of the factors relevant to a determination of staleness therefore weighs in favor of a finding of staleness here, or is neutral. The Court should therefore decline to adopt the R&R's conclusion and should hold that the search warrant affidavit failed to establish probable cause because it was based on stale information.

**C.    The search warrant affidavit omitted material information.**

Khateeb's motion to suppress argued that the search warrant affidavit was deficient for the additional reason that it failed to disclose material information within the government's knowledge that (1) tends to negate the premise that Khateeb knew AM-2201 was an analogue; and (2) showed that the events it described were stale. Doc. 177 at 13-17. A search warrant affidavit may be fatally deficient if it omits known material information. *See, e.g., United States*

*v. Glover*, 755 F.3d 811 (7th Cir. 2014); *United States v. Jacobs*, 986 F.2d 1231, 1234-35 (8th Cir. 1993).

Khateeb further requested an evidentiary hearing regarding whether these omissions from the search warrant were made knowingly or recklessly.  Doc. 177 at 17.  Under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), where a defendant makes a "substantial preliminary showing" that the search warrant affidavit knowingly or recklessly included "a false statement" that "is necessary to the finding of probable cause," the court should hold an evidentiary hearing if the defendant requests one.  If the defendant establishes at the hearing by a preponderance of the evidence that the affiant "made a false statement or omission knowingly and intentionally, or with reckless disregard for the truth," and "that, with the recklessly omitted information added to the affidavit, the reformed affidavit fails to establish probable cause," then the warrant should "be voided and the fruits of a search excluded."  *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013).  For purposes of the *Franks* analysis, "allegations of material omissions" are "treated essentially similarly to claims of material misstatements."  *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).  Accordingly, if the Court finds the allegations in the search warrant affidavit to be sufficient to establish probable cause, it should consider whether the finding of probable cause is negated when considered in light of the material information that was omitted from the affidavit.  *See Franks*, 438 U.S. at 156 (1978); *Martin*, 615 F.2d at 328.  "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination."  *Gifford*, 727 F.3d at 98-99 (quoting *Burke v. Town of Walpole*, 405 F.3d 66, 81-82 (1st Cir. 2005)).

The affiant here knowingly or recklessly omitted material information from the search warrant affidavit.   The search warrant affidavit stated as fact that "[c]hemists and pharmacologists assigned to the DEA – Office of Diversion Control have determined that [AM-2201] is substantially similar in chemical structure to the schedule I controlled substance JWH-018 and has substantially similar pharmacological effects on the central nervous system as JWH-018." Ex. 1 ¶ 29.   It did not disclose the significant scientific disagreement regarding this conclusion.   The existence of this scientific disagreement was material both to the magistrate's determination of whether the government had established that there was probable cause to believe that AM-2201 is an analogue, and to whether there was probable cause to believe that Khateeb acted with knowledge that it was an analogue.   After all, it is questionable whether knowledge can be imputed to a layperson of a proposition that scientists within the field cannot even agree on.

The R&R states that Khateeb failed to make the necessary "substantial preliminary showing that either agent knew about any scientific disagreement or that either agent recklessly omitted the information even if privy to the debate." Doc. 285 at 8.   To the contrary, the motion to suppress specifically described the evidence that the agents were aware of the scientific disagreement regarding whether AM-2201 is an analogue.   As is discussed in Khateeb's motion to dismiss, there have been several hearings in Analogue Act cases at which it was clear that there was substantial scientific disagreement regarding the application of the "substantially similar" standard to purported analogues, as well as a lack of scientific research to support the DEA scientist's conclusions regarding the pharmacological effect of synthetic cannabinoids. *See* Doc. 172 Ex. 1, Ex. 3.   The first of the evidentiary hearings at which scientific issues relating

18

to analogue determinations were addressed took place within the Middle District of Florida, and the search warrant affiant was present at that hearing.  Doc. 172 Ex. 1 at 20.  Additionally, after the date of those evidentiary hearings, but well before the submission of the search warrant application at issue here, the government was required under *Brady* to disclose documents showing that there was internal disagreement among DEA scientists regarding how analogue determinations should be made.  Doc. 173 Ex. 1.  The *Brady* disclosure took place in one of the Middle District of Florida cases that was the subject of that evidentiary hearing, and was likewise an event the affiant would have been aware of.

The search warrant affidavit further failed to disclose the lack of notice to the public during the relevant time period regarding the government's conclusion that AM-2201 is an analogue.  Again, there can be no question that the affiant was aware of this issue.  Lack of notice to the public of the DEA's analogue conclusions was also addressed at the Middle District of Florida evidentiary hearing that the affiant attended.  Doc. 172 Ex. 1 at 255-57.

Finally, the affiant knew or should have known that there was no evidence that Khateeb had any involvement with AM-2201 after July 2012.  Not only did the search warrant affidavit failed to disclose the facts necessary to conclude that the affidavit's allegations regarding AM-2201 were stale, but it was also affirmatively misleading regarding the time frame in which the events alleged took place.  Although the government was or should have been aware that any purchases of AM-2201 Khateeb made from Blue Sky/Mountain Industries took place in 2011, it described those purchases as having taken place "over the past few years."  Doc. 177 Ex. 1 ¶ 36.  This phrasing would lead the reader to believe that the alleged purchases were ongoing or could have taken place recently, when that was far from the truth.

19

Khateeb has thus made the substantial preliminary showing required by *Franks* that the search warrant affidavit omitted material information at least recklessly regarding the following issues:

- the scientific disagreement about the application of the "substantially similar" standard to determine whether two substances are substantially similar in chemical structure under the Analogue Act;

- the lack of scientific research to support the DEA scientist's conclusions that AM-2201 is substantially similar in pharmacological effect to JWH-018;

- the lack of notice to the public during the relevant time period of the government's conclusion that AM-2201 is an analogue; and

- the staleness of the search warrant affidavit's allegations regarding AM-2201.

The omitted information was critical to the probable cause determination and had it been considered by the magistrate, would have negated probable cause. The Court should therefore reject the R&R's conclusion that Khateeb has not made the showing necessary for a *Franks* hearing and should order an evidentiary hearing at which Khateeb will have the opportunity to establish that the material omissions from the search warrant affidavit were made knowingly or recklessly.

**D.     The search warrant was overbroad.**

The search warrant for Khateeb's email included no date limitation, permitting the government to obtain his emails over the entire decade-long span during which the account had existed. See Doc. 177 Ex. 1 ¶ 42 (email account was established in 2002). For this reason, Khateeb contended in his motion to suppress that the search warrant was overbroad. The Fourth Amendment's warrants clause "was intended as a bulwark against 'the 'general warrant' abhorred by the colonists' and protects against 'a general, exploratory rummaging in a person's

belongings.'" *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The "overarching purpose" of the search warrant requirement "is to ensure that 'those searches deemed necessary should be as limited as possible.'" *Id.* (quoting *Coolidge*, 403 U.S. at 467). The warrants clause therefore "forbids overbreadth," meaning that it requires " that the scope of the warrant be limited to the probable cause on which the warrant is based." *Id.* (quoting *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006)).

Here probable cause existed, if at all, only with respect to email information dated between April 2011 and July 2012. No date limitation whatsoever was placed on the documents to be searched or the documents permitted to be seized under the warrant. The R&R nonetheless states that the warrant is not overbroad because it "limits the seizure of electronic information to that connected with the possession, receipt, and distribution of controlled substances," which the R&R states creates an appropriate nexus and prevents the search warrant from being overbroad. Doc. 285 at 9.

The search warrant covers a broad array of electronic documents if they are related to "controlled substances." Doc. 177 Ex. 2 Attachment B. The warrant on its face thus permits law enforcement officers to rummage through more than ten years of Khateeb's emails to decide what they believe is evidence of a controlled substance offense and seize those documents.

The courts have cautioned against the "serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010). The Ninth Circuit stated in *Comprehensive Drug Testing* that:

> We recognize the reality that over-seizing is an inherent part of the electronic search process and proceed on the assumption that, when it comes to the seizure of electronic records, this will be far more common than in the days of paper records. This calls for greater vigilance on the part of judicial officers in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures. The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect.

*Id.* at 1177.  In a recent case involving a subpoena for email information, a federal court noted the rule that "[a] warrant is overbroad if it expands the scope of the government's search beyond the places implicated by the probable-cause showing." *In re Search of Google Email Accounts identified in Attachment A*, 2015 WL 926619, at *6 (D. Alaska Mar. 3, 2015).  In that case, as here, the warrant the government sought authorized "the government to seize and search the entirety of the [the subject email accounts], even though the government ha[d] only established probable cause to look at a small number of emails within a narrow date range." *Id.*  The court therefore denied the requested warrant as overbroad. *Id.*  The search warrant here was overbroad for the same reasons.

Nor did the requirement that the seized materials involve "controlled substances" save the search warrant from overbreadth.  Federal courts have held search warrants containing similar phrasing allowing the seizures of a general category of materials that are the "fruits and instrumentalities" of a specified offense to be overbroad.  *See e.g.*, *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) (search warrant that authorized seizure of items that were "fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)" was facially overbroad); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir.1985) (warrant that authorized seizure of "evidence of a violation [of] 21 U.S.C. §§ 841, 846" was overbroad); *United States v.*

*Cardwell*, 680 F.2d 75, 76 (9th Cir.1982) (search warrant for "corporate books and records . . . which are the fruits and instrumentalities, of violations of 26 U.S.C. s 7201" was overbroad). Allowing law enforcement to review over ten years worth of email documents with the only limitation being their own determination that the documents they seized pertained to controlled substances is no meaningful limitation at all.

For these reasons, the Court should decline to adopt the R&R's conclusion that the warrant was sufficiently particular to satisfy the Fourth Amendment.

### E.        The good faith exception does not apply.

Finally, Khateeb explained in his motion to suppress that the good-faith exception does not apply.  Doc. 177 at 18-19.  The Supreme Court held in *United States v. Leon*, 468 U.S. 897 (1984), that evidence seized pursuant to a deficient search warrant will not be excluded so long as the officer's reliance on the search warrant was in good faith.  *Id.* at 919-20.  *Leon* identified, however, four circumstances in which the good faith exception to the exclusionary rule does not apply and suppression is appropriate:

> (1) where the magistrate "in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;"
>
> (2) "where the issuing magistrate wholly abandoned his judicial role;"
>
> (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or
>
> (4) where "a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid."

*Id.* at 923.

The *Leon* good faith exception does not apply in this case because both the first and third circumstances identified in *Leon* exist here.  With respect to the first *Leon* exception, where the affiant knowingly or recklessly omits material information, and "the warrant would not have been supported by probable cause, if the omitted material had been included," the good faith exception does not apply and suppression should be granted.  *Jacobs*, 986 F.2d at 1235.  As discussed above, it is anticipated that a *Franks* hearing will establish that material information was knowingly or recklessly omitted from the search warrant affidavit.  In that event, the Court should order suppression of the fruits of the email search.

The third *Leon* exception applies where a reasonable officer would not have relied on a search warrant because it plainly lacked probable cause or was overbroad on its face.  *United States v. Powers*, 1 F. Supp. 3d 470, 477-78 (M.D.N.C. 2014).  Here, law enforcement needed only to review the search warrant affidavit to be aware it contained no evidence of *mens rea*.  Likewise, the overbreadth of the search warrant was obvious, in that it contained no date restriction whatsoever despite the lack of any allegations of criminal activity outside a defined time period.

The R&R does not address the *Leon* factors.  Upon a finding that the search warrant for Khateeb's email information was deficient, the Court should determine that the good-faith exception does not apply.

## CONCLUSION

For these reasons, the Court should reject the Magistrate Judge's suggested ruling on Khateeb's motion to suppress.  It is respectfully requested that the Court order a hearing under

*Franks v. Delaware*, 438 U.S. 154 (1978), and thereafter enter an order suppressing all evidence

derived from the search of Khateeb's email information.

Respectfully submitted

/s/ *James E. Felman*
James E. Felman (FBN 0775568)
jfelman@kmf-law.com
Katherine Earle Yanes (FBN 0159727)
kyanes@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:     (813) 229-1118
Facsimile:      (813) 221-6750

*Counsel for Ali El Khateeb*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2015, I electronically filed the foregoing

with the Clerk of the Court which will send a notice of electronic filing to:

Barry A. Cohen                                                    lori@palmierilaw.com
Kevin J. Darken
bcohen@tampalawfirm.com                              James C. Preston, Jr.
kdarken@tampalawfirm.com                             James Muench
                                                            James.preston@usdoj.gov
Victor D. Martinez                                       james.muench2@usdoj.gov
vmartinez@tampabay.rr.com

Nicholas G. Matassini
ngm@matassinilaw.com

Lori D. Palmieri


/s/ James E. Felman
James E. Felman

26